**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**No. 25-5363**

# In the United States Court of Appeals for the District of Columbia Circuit

THE LOUIS D. BRANDEIS CENTER, INC., D/B/A THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW, AND JEWISH AMERICANS FOR FAIRNESS IN EDUCATION,
PLAINTIFFS-APPELLANTS,

*v.*

UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS SECRETARY, UNITED STATES DEPARTMENT OF EDUCATION; KIMBERLY RICHEY, IN HER OFFICIAL CAPACITY AS ASSISTANT SECRETARY, UNITED STATES DEPARTMENT OF EDUCATION,
DEFENDANTS-APPELLEES.

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA (CIV. NO. 24-1982)*
*(THE HONORABLE RUDOLPH CONTRERAS, J.)*

## REPLY BRIEF OF APPELLANTS


MITCHELL D. WEBBER
ANDREW J. TOPAL
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, D.C. 20006*

GREGORY F. LAUFER
ROBERT N. KRAVITZ
KATHLEEN H. PIERRE
NOAH N. COHEN
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019*
*(212) 373-3000*
*glaufer@paulweiss.com*

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. The District Court Erred in Dismissing Count I of the Complaint Because It Misconstrued the Nature of the Claim ........ 3

A. The Cases Cited by the Department Are Inapplicable ........ 4

B. Allowing APA Claims Based on Violations of an Agency's Own Policies Would Not "Swallow the Rule" ........ 8

C. Appellants Do Not Seek to Compel the Department to Take Action Under Title VI ........ 9

II. The Department Did Not Have Discretion to Violate Its Own Case Processing Manual ........ 13

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

Page

### CASES

*Albra* v. *Off. for C.R.*,
2018 WL 6720648 (D.C. Cir. Dec. 18, 2018) .................................................... 7

*Albra* v. *U.S. Dep't of Educ.*,
308 F. Supp. 3d 292 (D.D.C. 2018) ................................................ 6, 7

*Bauer* v. *Fed. Deposit Ins. Corp.*,
38 F.4th 1114 (D.C. Cir. 2022) ........................................................ 13

*Castaneira* v. *Noem*,
138 F.4th 540 (D.C. Cir. 2025) ................................................ 2, 9, 15

*Consarc Corp.* v. *Iraqi Ministry*,
27 F.3d 695 (D.C. Cir. 1994) ........................................................ 10

*Council of and for the Blind* v. *Regan*,
709 F.2d 1521 (D.C. Cir. 1983) (en banc) .......................................... 5

*F.C.C.* v. *Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .............................................................. 10, 15

*Garcia* v. *Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ................................................. 10, 11

*Heckler* v. *Chaney*,
470 U.S. 821 (1985) .................................................................... 13

*Love* v. *Connor*,
525 F. Supp. 2d 155 (D.D.C. 2007) ................................................ 12

*McKenna* v. *Weinberger*,
729 F.2d 783 (D.C. Cir. 1984) ................................................. 11, 12

*SAI* v. *Department of Homeland Security*,
149 F. Supp. 3d 99 (D.D.C. 2015) ............................................ 12, 13

Page

Table of Authorities—continued:

*Salem Hosp. Corp.* v. *NLRB*,
808 F.3d 59 (D.C. Cir. 2015) .......................................................................10, 15

*Skewes-Cox* v. *Georgetown Univ. Law Center*,
2024 WL 939979 (D.D.C. Mar. 5, 2024) ...............................................................7

*Washington Legal Foundation* v. *Alexander*,
984 F.2d 483 (D.C. Cir. 1993)...............................................................................6

*Women's Equity Action League* v. *Cavazos*,
906 F.2d 742 (D.C. Cir. 1990).....................................................................5, 9, 12

*Wright* v. *Dominguez*,
2004 WL 1636961 (D.C. Cir. July 21, 2004) ......................................................7, 8

**STATUTES**

Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*
.................................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13

5 U.S.C. § 701(a)(2) .............................................................................................13

5 U.S.C. § 704 ........................................................................................................2

5 U.S.C. § 706 ......................................................................................................13

5 U.S.C. § 706(1)...................................................................................................12

## SUMMARY OF ARGUMENT[1]

It is undisputed that the Department dismissed Appellants' administrative complaint and shut down its investigation of Penn's egregious misconduct in violation of the Department's own Case Processing Manual.

The Department said it was terminating the investigation pursuant to Section 110(h) of the Manual, which permits the Department to dismiss a complaint and close an investigation when a parallel, private class action has been filed. But, as the District Court itself acknowledged, "OCR conceded that the *Yakoby* complaint [the parallel private action] was 'not filed as a class action.'" And the Department did not state that any of the other reasons for closing an investigation set forth in Sections 108 and 110 of the Manual applied—only Section 110(h), which it conceded does *not* apply.

Contrary to what the District Court ruled and the Department argues in its opposition brief, it is not and cannot be the law that Appellants are barred from asserting an APA claim against the Department for this undisputed violation of its own express, written procedures. As this Court recently reconfirmed: "It is a familiar rule of administrative law that an agency must abide by its own regulations. This fundamental principle remains

---

[1] Defined terms are the same as in Appellants' opening brief.

true even for gratuitous procedural rules that limit otherwise discretionary actions." *Castaneira* v. *Noem*, 138 F.4th 540, 550-51 (D.C. Cir. 2025) (alteration, citations, and internal quotation marks omitted).

None of the cases the Department cites in its opposition brief are to the contrary. Like the District Court, the Department relies on a line of cases in which this Court has ruled that a litigant cannot bring an APA action against an administrative agency for terminating or failing to bring an action against a third party, simply because the litigant disagrees with the agency's decision—if the litigant has the alternative remedy of bringing its own action against the third party.

That is not this case. Appellants do not simply disagree with the Department's decision to drop its investigation of Penn. Rather, Appellants have identified an express written policy that the Department violated, and the Department has identified no reason for dropping its investigation of Penn other than its erroneous application of its Case Processing Manual. Appellants do not have an adequate, alternative remedy to redress *that* violation, so Section 704 of the APA does not bar their claim. Contrary to what the Department argues, none of its cases address that issue.

The Department's alternative argument—that it had unfettered discretion to dismiss Appellants' administrative complaint and to shut down its investigation of Penn—fares no better.

Nothing in the APA or in any other statute gives the Department discretion to violate its own Case Processing Manual. The Department itself acknowledges that agency enforcement and investigatory decisions committed to agency discretion may nonetheless be subject to judicial review where there are judicially manageable standards governing how and when an agency should exercise its discretion. The Department's Case Processing Manual provides precisely such a standard and the Department violated it. Judicial review is therefore appropriate and warranted.

## ARGUMENT

### I. The District Court Erred in Dismissing Count I of the Complaint Because It Misconstrued the Nature of the Claim

As Appellants' opening brief showed, there is no dispute that the Department violated its Case Processing Manual ("CPM" or the "Manual") when it dismissed Appellants' administrative complaint asking that the Department investigate Penn for allowing egregious antisemitism to fester on its campus. The Department initially took up the investigation. But it then reversed course and terminated its investigation, saying that it was doing so

pursuant to Section 110(h) of its Case Processing Manual—a provision that authorizes the Department to terminate an investigation where a class action with the same allegations has been filed against the same institution.

In the same stroke, the Department conceded that the private action that had been filed against Penn—*Yakoby* v. *University of Pennsylvania*, No. 2:23-cv-4789 (E.D. Pa. 2023)—"was 'not filed as a class action.'" App'x at 101, 106.

The Department did not say that it found Appellants' allegations to be untrue, that Penn's actions did not constitute a violation of Title VI, or that any of the other reasons for dismissing allegations or closing an investigation identified in Sections 108 and 110 of the Case Processing Manual were met. The *only* reason it offered for terminating its investigation was the filing of *Yakoby*, and the only provision of the Case Processing Manual that it relied upon was Section 110(h)—which plainly does not apply.

**A. The Cases Cited by the Department Are Inapplicable**

Like the District Court, the Department's opposition brief misconstrues the nature of Appellants' APA claim, which is that the Department violated the express terms of its own Manual and thereby dismissed the administrative complaint unlawfully.

Thus, like the District Court, the Department relies on a line of cases, beginning with *Women's Equity Action League* v. *Cavazos*, 906 F.2d 742 (D.C. Cir. 1990) ("*WEAL*"), that do not deal with this type of claim. (Opp. 12-18.) In those cases, litigants who were pressing government agencies to take action against alleged discrimination by third parties sought to bring APA claims to try to force the agency to take action, simply because they disagreed with the agency's decision. Unlike here, in none of the cases did the litigant claim that the agency violated a specific provision of its own rules and regulations in terminating an investigation.

For example, in *WEAL*, the plaintiffs brought an APA claim against the Department of Health, Education, and Welfare ("HEW") to compel HEW to continue 20 years of civil rights oversight of educational institutions receiving government funds, after HEW decided the oversight was no longer appropriate. *WEAL*, 906 F.2d at 744-47. In line with its earlier decision in *Council of and for the Blind* v. *Regan*, 709 F.2d 1521 (D.C. Cir. 1983) (en banc), this Court affirmed the dismissal of the APA claim on the ground that direct private claims against allegedly discriminatory institutions provided an adequate alternative remedy. *WEAL*, 906 F.2d at 750-51. There was no claim that HEW violated any of its own rules or regulations in

terminating its oversight; the plaintiffs were merely second-guessing whether the agency was adequately fulfilling its responsibility to combat discrimination.

Similarly, in *Washington Legal Foundation* v. *Alexander*, 984 F.2d 483 (D.C. Cir. 1993), this Court affirmed the dismissal of APA claims seeking to compel the Department of Education to take certain enforcement actions under Title VI, again based on general claims that the Department was abdicating its enforcement responsibilities—and not a claim that the Department was violating a specific Department rule.

The Department argues that this Court "has repeatedly rejected" plaintiffs' attempts to frame challenges to agency enforcement decision-making as actions to ensure compliance with the agency's own rules. (Opp. 16.) But the cases the Department cites do not support its argument.

The Department first cites *Albra* v. *U.S. Department of Education*, a case in which the district court dismissed the plaintiff's claim based on the existence of an adequate alternative remedy, and which this Court summarily affirmed. 308 F. Supp. 3d 292 (D.D.C. 2018), *aff'd sub nom. Albra* v. *Off. for C.R.*, 2018 WL 6720648 (D.C. Cir. Dec. 18, 2018). (Opp. 16-17.) The district court decision says that one of the plaintiff's claims "decrie[d]

OCR's failure to follow its Case Processing Manual in pursuing the discriminating bodies." 308 F. Supp. 3d at 293. But the district court decision does not discuss any details of that claim, and there is no indication that the plaintiff specified in any way how OCR failed to follow its Case Processing Manual or identified an express provision of the Manual that was violated—in contrast to the allegation here. On appeal, the plaintiff did not challenge the district court's determination that he possessed an adequate alternative remedy. 2018 WL 6720648, at *1. The Court's summary affirmance, therefore, was not an affirmance on that issue.

*Skewes-Cox* v. *Georgetown University Law Center*, 2024 WL 939979 (D.D.C. Mar. 5, 2024), *aff'd*, 2024 WL 4248506 (D.C. Cir. Sept. 18, 2024), and *Wright* v. *Dominguez*, 2004 WL 1636961 (D.C. Cir. July 21, 2004), which the Department also relies on (Opp. 17-18), do not support its position, either.

In *Skewes-Cox,* a student filed an administrative complaint with the Department, alleging violations of the Rehabilitation Act by his law school. The student then brought an APA claim against the Department after it dismissed his complaint, *not* because the Department violated its Case Processing Manual or other policies, but because it allegedly "relied on factual errors." (Opp. 17.) Thus, neither the district court decision nor this Court's

summary affirmance dealt with the issue here—an APA claim based on an admitted violation of the Department's own procedural rule.

Similarly, in *Wright*, the decision simply said that the plaintiff "challenged the procedures used by the EEOC to process his discrimination complaints." 2004 WL 1636961, at *1. There is no indication that the plaintiff alleged that the EEOC violated a case processing manual or other agency rule. In any event, the Court ruled that there was an adequate alternative remedy for such alleged procedural violations through de novo review *in the district court*—not through a private action against the third party, as the Department is urging here.

**B. Allowing APA Claims Based on Violations of an Agency's Own Policies Would Not "Swallow the Rule"**

The Department next argues that, "if given effect, Plaintiffs' purported distinction would create an exception that swallows the rule." (Opp. 18.) It is difficult to see why that would be. Surely the Department and other agencies do not violate their procedural manuals every time they undertake an investigation. Allowing APA claims to proceed when an agency explicitly and admittedly violates its own policies is not an "exception"—it is a narrow application of settled law that would likely arise only rarely.

Unlike plaintiffs in the *WEAL* line of cases, Appellants are not second-guessing an agency's conclusion that an investigation is not warranted or claiming that an agency is abdicating its responsibilities. Nor are Appellants, in the Department's words, simply "dissatisfied with a federal agency's investigatory decision." (Opp. 19.) Rather, Appellants have identified a specific provision in the Department's own Manual that the Department violated. That is not an "exception that swallows the rule," but rather a fundamental principle of administrative law, as this Court stated in *Castaneira*. If, as the Department argues, separate APA claims were *not* allowed in these circumstances, agencies could violate their own procedural manuals with impunity.

### C. Appellants Do Not Seek to Compel the Department to Take Action Under Title VI

The Department's argument that Appellants necessarily "seek to compel the Department to take action under Title VI" mischaracterizes Appellants' claim. (Opp. 20-21.) Appellants are not seeking to compel the Department to continue its investigation of Penn if the Department concludes that the allegations do not warrant an investigation. Rather, Appellants are simply asking that the Department be prohibited from terminating its investigation for an invalid reason.

Requesting that an unlawfully closed investigation be reopened merely restores the *status quo ante*. *See F.C.C.* v. *Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agencies may not "simply disregard rules that are still on the books"); *Salem Hosp. Corp.* v. *NLRB*, 808 F.3d 59, 74 (D.C. Cir. 2015) (it is "incumbent upon agencies to follow their own procedures" (citation omitted)); *see also Consarc Corp.* v. *Iraqi Ministry*, 27 F.3d 695, 702 (D.C. Cir. 1994) (reversing district court orders and requiring restoration of the *status quo ante*). From there, the Department may continue the investigation, consistent with its own binding rules and regulations.

The Department's reliance on *Garcia* v. *Vilsack*, 563 F.3d 519 (D.C. Cir. 2009) is unavailing. (Opp. 22-23.) *Garcia* involved claims by female and Hispanic farmers that the Department of Agriculture (the "USDA") had illegally discriminated against them in the administration of its farm benefits programs and failed to act on their administrative complaints. 563 F.3d at 520-21. Earlier, Congress had enacted a special remedial statute giving such claimants a right either to file a complaint against the USDA in federal court under the Equal Credit Opportunity Act ("ECOA"), or to renew their administrative complaint with the USDA and seek *de novo* review in the district court if it were denied. *Id.* at 521-22.

In those circumstances, this Court ruled that the specific new remedies that the statute created were an adequate alternative remedy to an APA claim against the USDA, and that, in enacting the remedial statute, "Congress did not intend for complainants who choose to proceed in the district court on their ECOA claims to pursue their failure-to-investigate claims under the APA simultaneously in the same lawsuit." *Garcia*, 563 F.3d at 523-24. Those are not the circumstances here. Congress has not provided an alternative way for Appellants to pursue their claim of a procedural violation by the Department through any means other than an action under the APA.

The Department argues that, in *Garcia*, this Court rejected Appellants' "broad reading" of *McKenna* v. *Weinberger*, 729 F.2d 783 (D.C. Cir. 1984), citing a passage in *Garcia* in which the Court disagreed that *McKenna* "stands for the proposition that a plaintiff may always bring an APA claim alleging that an agency failed to follow its own regulations in processing or investigating discrimination allegations, notwithstanding the existence of other adequate remedies at law." *Garcia*, 563 F.3d at 526. (Opp. 22-23.)

But that is not Appellants' reading of *McKenna*. *McKenna* stands for the proposition that an APA claim and a discrimination claim can be

separate and distinct claims. 729 F.2d at 791. Appellants do not contend that this means that a plaintiff may *always* bring an APA claim alleging that an agency failed to follow its own regulations in investigating discrimination allegations, notwithstanding the existence of other adequate remedies at law.

Appellants recognize that, under the *WEAL* line of cases, if an alternative remedy for a discrimination claim against a third party exists, a plaintiff may not maintain an APA claim against an agency for "failure to adequately investigate, monitor, or police that discrimination," or simply because it disagrees with an agency's decision not to pursue an investigation. *Love* v. *Connor*, 525 F. Supp. 2d 155, 160 (D.D.C. 2007), *aff'd sub nom. Garcia* v. *Vilsack*, 563 F.3d 519 (D.C. Cir. 2009). But these cases do not stand for the proposition that a claim against a third party is an adequate alternative remedy where, as here, the plaintiff is alleging a specific violation by an agency of its own written procedures.

Finally, the Department argues that *SAI* v. *Department of Homeland Security*, 149 F. Supp. 3d 99 (D.D.C. 2015), which Appellants' opening brief cited, applies "only as to APA claims brought under 5 U.S.C. § 706(1) (*i.e.*, unreasonable delay)." (Opp. 23-24.) Nothing in the case supports that argument. The district court in *SAI* concluded: "because Plaintiff's cause

of action arises under the APA itself, there is no independent statutory scheme that implicitly or expressly precludes APA review." 149 F. Supp. 3d at 116. The district court's analysis did not turn on the specific subsection of Section 706 that the plaintiff invoked.

## II. The Department Did Not Have Discretion to Violate Its Own Case Processing Manual

As an alternative argument, the Department contends that the Court should affirm the dismissal of Appellants' claims because the Department's termination of its investigation of Penn was purportedly "agency action committed to agency discretion" and thus not subject to judicial review. *See* 5 U.S.C. § 701(a)(2). (Opp. 24-29.) The Department acknowledges that the District Court did not reach this issue. (Opp. 25 n.4.) This Court's general practice is to remand unaddressed issues to the district court. *Bauer* v. *Fed. Deposit Ins. Corp.*, 38 F.4th 1114, 1126 (D.C. Cir. 2022). But, in any event, the Department's argument fails.

As the Department acknowledges, under *Heckler* v. *Chaney*, 470 U.S. 821 (1985), agency action is unreviewable "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion." *Id.* at 830. (Opp. 27.) Here, there is a judicially manageable standard: the Department's Case Processing Manual, which spells out in

detail the circumstances in which the Department may dismiss allegations and close an investigation. And that standard was not met.

As the Department recites, the Case Processing Manual provides numerous circumstances in which OCR may dismiss a complaint. (Opp. 27.) But the Department invoked only one such reason for closing its investigation of Penn—the Manual's provision for closing an investigation when a parallel private class action is filed—even though the express requirement that such a parallel private action be a *class action* admittedly was not met. Nothing in the Case Processing Manual or any other rule or regulation granted the Department discretion to disregard that requirement.

The Department's argument that "[c]ourts have long recognized that the Department's investigations and resolutions of individual complaints are the type of agency action committed to agency discretion" (Opp. 25)—and all of the cases that it cites in support—are off target. Here, the Department did not make a discretionary finding that Appellants' allegations against Penn lacked merit, failed to state a cause of action, or were subject to dismissal for some other permissible reason. Rather, the Department dismissed Appellants' complaint and terminated its investigation for an expressly *impermissible* reason.

The Department was obligated to comply with the rules it set for itself. *Fox Television Stations*, 556 U.S. at 515; *Salem Hosp. Corp.*, 808 F.3d at 74. It cannot shield its decision by invoking discretionary authority that it did not exercise. To quote this Court's decision in *Castaneira* again: "[A]n agency must abide by its own regulations. This fundamental principle remains true even for gratuitous procedural rules that limit otherwise discretionary actions." 138 F.4th at 550-51 (citations and internal quotation marks omitted).

## CONCLUSION

The order of the District Court should be reversed and the case remanded for further proceedings.

Respectfully submitted,


PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

BY: /s/ Gregory F. Laufer
GREGORY F. LAUFER
ROBERT N. KRAVITZ
KATHLEEN H. PIERRE
NOAH N. COHEN
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
glaufer@paulweiss.com
rkravitz@paulweiss.com
kpierre@paulweiss.com
ncohen@paulweiss.com

MITCHELL D. WEBBER (D.C. BAR # 1024005)
ANDREW J. TOPAL (D.C. BAR # 1659154)
2001 K Street, N.W.
Washington, D.C. 20006
(202) 223-7300
mwebber@paulweiss.com
atopal@paulweiss.com

*Attorneys for Plaintiffs The Louis D. Brandeis Center, Inc., d/b/a The Louis D. Brandeis Center for Human Rights Under Law, and Jewish Americans for Fairness in Education*


JULY 23, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Gregory F. Laufer, counsel for appellants, certify, pursuant to Federal Rule of Appellate Procedure 32(g), that the foregoing Reply Brief of Appellants is proportionately spaced, has a typeface of 14 points, and contains 2,993 words.

/s/ Gregory F. Laufer
GREGORY F. LAUFER

JULY 23, 2026